George W. AUS, Appellant,

v.

NORTH DAKOTA WORKMEN'S COM-
PENSATION BUREAU, Appellee.

Civ. No. 9590.

Supreme Court of North Dakota.

June 18, 1979.

Robert A. Alphson, Grand Forks, for appellant; argued by Donald W. Legreid, Grand Forks.

Richard J. Gross, Special Asst. Atty. Gen., Workmen's Compensation Bureau, Bismarck, for appellee.

PAULSON, Justice.

The plaintiff and appellant, George W. Aus ["Aus"], has appealed from the judgment of the Stutsman County District Court which affirmed the decision of the North Dakota Workmen's Compensation Bureau ["Bureau"] denying Aus's claim for total disability benefits. Aus contends that the findings of fact in the Bureau's order denying liability are not supported by the evidence and that Aus is entitled to total disability benefits from the Bureau. Alternatively, Aus contends that he is entitled to an evidentiary hearing on his claim.

On October 20, 1975, Aus was injured within the scope of his employment as a janitor at the Stutsman County Courthouse in Jamestown when he fell off a ladder while washing windows. He sustained a broken heel, a bruised hip, and a sprained hand as the result of his fall. Aus filed a claim with the Bureau and received temporary total disability benefits for work loss and medical expenses from the date of his injury until January 31, 1977, when his work loss benefits were terminated. Medical benefits related to the accident were not terminated.

On February 8, 1977, the Bureau sent Aus a letter notifying him that his work loss benefits had been terminated as of

January 31, 1977. The Bureau based its decision to terminate Aus's benefits on a letter from Dr. C. W. Hogan, an orthopedic surgeon, which stated that Aus should be able to return to work. Aus continued to claim that he was unable to work because his heel was painful and he could not put much weight on it. In response to Aus's claim, the Bureau sent him to the Rehabilitation Hospital at Grand Forks from June 19 to July 1, 1977, for therapy and evaluation. Dr. Genaro I. Tiongson treated Aus while he was at the Rehabilitation Hospital and ordered outpatient therapy for Aus following his hospital stay. Dr. Tiongson did not determine that Aus was fit to return to work until September 12, 1977. Therefore, the Bureau authorized the payment of work loss benefits to Aus for the period from July 2, 1977, until September 12, 1977.

On October 3, 1977, the Bureau paid Aus a permanent, partial impairment award after Dr. Tiongson determined that Aus suffered a 2% permanent disability as the result of his fall. The permanent impairment award is unrelated to work loss benefits and is not involved in this appeal.

In October of 1977, Aus requested that the Bureau grant him a rehearing in order to consider additional disabilities not previously considered by the Bureau. The Bureau told Aus's attorney that it would consider evidence obtained from treating physicians and that no hearing was necessary. The Bureau also told Aus's attorney that if he did not agree with the Bureau's position, and if he wanted a formal order from which to appeal, the Bureau would issue such an order. Aus's attorney requested a formal order rather than submit the additional medical evidence. On December 6, 1977, the Bureau issued an order denying Aus further benefits or a rehearing.

Aus appealed the Bureau's decision to the Stutsman County District Court on January 3, 1978. He also filed a motion to remand the case to the Bureau "for the purpose of holding a hearing to obtain further evidence and testimony" from Dr. Edwin G. Olmstead regarding an alleged work-related psychological neurosis suffered by Aus.

Following a hearing on Aus's motion, the district court, on July 5, 1978, ordered the case remanded to the Bureau "for consideration of additional medical and disability information".

Following the remand, the Bureau considered reports from Dr. Olmstead, Clinical Psychologist George L. Lindenfeld, Ph.D., and Clinical Evaluator P. Tim Harris on Aus's alleged psychological neurosis. On July 14, 1978, the Bureau issued an order denying further liability to Aus and he again appealed to the district court.

The district court determined that the Bureau's decision denying liability to Aus for further benefits was supported by substantial evidence and the district court affirmed the decision. Aus then filed an appeal with this court. The Bureau filed a cross-appeal regarding attorney fees, but the parties entered into a stipulation to dismiss the cross-appeal on April 19, 1979.

Aus has raised the following issues on appeal:

1. What standard of review on appeal must be applied to the Bureau's findings of fact?
2. Is Aus entitled to total disability benefits?
3. Is Aus entitled to an evidentiary hearing before the Bureau on his claim?

We will first determine what standard is proper for reviewing the Bureau's findings of fact on appeal. Aus contends that the "preponderance of evidence" standard is proper rather than the "substantial evidence" standard referred to in the district court's memorandum opinion.

Section 28–32–19, N.D.C.C., as amended in 1977, requires that the Bureau's findings of fact be supported by a preponderance of the evidence in order for the Bureau's decision to be affirmed on appeal to the Supreme Court. *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692, 696 (N.D.1978). Prior to the 1977 amendment of § 28–32–19, N.D.C.C., the applicable statutes and case law required that the Bureau's findings of fact be supported by

substantial evidence. *Steele, supra* 273 N.W.2d at 696–697; *Bank of Hamilton v. State Banking Bd.*, 236 N.W.2d 921 (N.D. 1975); *O'Brien v. North Dakota Workmen's Compensation Bureau*, 222 N.W.2d 379 (N.D.1974); and *Foss v. North Dakota Workmen's Compensation Bur.*, 214 N.W.2d 519 (N.D.1974). The dispute regarding which standard is applicable in the present case originated because the 1977 amendment of § 28–32–19, N.D.C.C., became effective after Aus was injured, but before the Bureau denied Aus's claim and issued its findings of fact. Aus was injured on October 10, 1975, while working at the Stutsman County Courthouse; the 1977 amendment of § 28–32–19, N.D.C.C., became effective on July 1, 1977; the Bureau denied Aus's claim and issued its findings of fact on December 6, 1977, and on July 14, 1978, respectively; and Aus appealed to the Supreme Court in 1979.

In *Steele, supra* 273 N.W.2d at 697, this court considered the issue of which standard of review was to be applied on appeal where the substantial evidence standard was in effect when the Bureau made its initial decision, but the preponderance of evidence standard was in effect when the case was appealed to the Supreme Court. The Bureau denied Steele's claim on March 10, 1977; the preponderance of evidence standard became effective on July 1, 1977; Steele's petition for rehearing was denied on October 20, 1977; and he subsequently appealed to the district court and to the Supreme Court.

We stated in *Steele, supra* 273 N.W.2d at 697:

". . . we conclude that to apply a substantially different standard on appeal than the one under which the claim was initially considered and decided would be unfair and unjust to all parties concerned. We therefore conclude that because the preponderance of evidence standard of review was not in effect at the time the Bureau made its findings of fact it does not apply to this case as presently submitted even though the petition for rehearing was denied after the effective date of the preponderance of evidence standard. It necessarily follows that the substantial evidence standard on review applies to this claim as it is presently submitted."

According to *Steele, supra,* therefore, the standard of review to be used on appeal is determined by the standard that was in effect when the Bureau made its initial decision on the claim and issued its findings of fact.

■ In the present case, the preponderance of evidence standard was in effect on December 6, 1977, when the Bureau first issued its findings of fact. Therefore, we conclude that the preponderance of evidence standard was applicable to Aus's appeal to the district court and his appeal to this court.

We hold that the findings of fact involved in Aus's appeal to this court will be reviewed pursuant to the preponderance of evidence standard.

The second issue raises the question of whether or not the Bureau's findings of fact are supported by a preponderance of the evidence. However, because we are remanding for an evidentiary hearing, we need not decide this issue. We have previously discussed the proper scope of review in this case, so the Bureau may be guided thereby on remand.

We will now consider Aus's argument that he is entitled to an evidentiary hearing before the Bureau on his claim. It appears from the record that Aus was not given the opportunity in an evidentiary hearing to meet his burden of proof that he was entitled to benefits from the workmen's compensation fund. On December 6, 1977, Aus's first request for a formal evidentiary hearing was denied by the Bureau. Aus again requested a hearing on February 28, 1978, when his appeal was pending before the Stutsman County District Court. Although the district court remanded the case to the Bureau for the consideration of additional evidence, the Bureau again refused to hold an evidentiary hearing.

In *Steele, supra,* we interpreted Rule 92–01–02–04 of the Rules of Procedure of the North Dakota Workmen's Compensation Bureau, which involves formal hearings before the Bureau.[1] We stated in *Steele, supra* 273 N.W.2d at 701, that, as a general rule:

" . . . whenever the Bureau has made an initial determination disallowing a claim based on a record made at an informal hearing, the claimant, upon request, is entitled to an evidentiary hearing, whether designated as a formal hearing or rehearing, if there is a dispute on material facts. The Bureau, on its own decision, may also hold a formal hearing."

We further stated, in *Steele, supra* 273 N.W.2d at 702:

"We are not concluding that whenever a claimant asks for a hearing or a rehearing or asks for the taking of a deposition with regard to the factual situation that the Bureau must accede to such wishes. Each case must be judged on its merits."

The present case involves the complicated issue of whether or not Aus is suffering from a compensable psychological disability as the result of his 1975 work-related injury. Such a matter is very difficult to resolve without a hearing where expert witnesses may be examined and cross-examined. In addition, Dr. Olmstead's qualifications to make a diagnosis of a psychological disability could more easily be determined by oral testimony and cross-examination than by the submission of written statements.

Dr. Olmstead's diagnosis and report were not precise regarding Aus's alleged hysterical neurosis. However, if Aus had been granted an evidentiary hearing by the Bureau, he could have elicited more detailed information from Dr. Olmstead. Furthermore, at a hearing Aus could have cross-examined any of the Bureau's experts who disagreed with Dr. Olmstead's diagnosis.

■ We conclude that the present case involves disputes of material facts. There-fore, we conclude that Aus is entitled to a formal hearing before the Bureau on his claim for benefits.

We hold that the Bureau erred in denying Aus a formal, evidentiary hearing on his claim for further benefits from the Bureau.

The Bureau's decision denying Aus's claim for further benefits is reversed and the case is remanded to the Bureau for the purpose of holding a formal hearing on Aus's claim.

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, J., dissents.

PEDERSON, Justice, dissenting.

I do not agree with the inference left by the majority opinion that the Workmen's Compensation Bureau must bear the burden of proving that this claimant is not entitled to an award. The preponderance of the evidence, supplied by his own doctors, indicates that Aus has recovered sufficiently from his injury to permit him to return to work. There is evidence that he was malingering. The Bureau should have no responsibility to refute a speculation that there might be a genuine conversion hysteria which: (1) has "no physiological or anatomical basis," (2) "was not explored to any great length," and (3) is impossible to probe.

The need for a hearing at which live witnesses would be examined and cross-examined might have been helpful but does not reach constitutional due process dimensions. Aus did not strenuously dispute the Bureau's argument that no hearing was demanded until the case reached this court. We have often said, and it is elementary, that objections must be ordinarily raised below to afford an opportunity to correct claimed errors before we will consider them on appeal. It shouldn't be necessary that the Bureau get a waiver in writing.

When we said in *Steele v. N.D. Workmen's Comp. Bur.,* 273 N.W.2d 692, 702

---

1. "Rule 92–01–02–04. REHEARING—FORMAL HEARING. Following an informal hearing, the bureau may set a rehearing on the claim pursuant to the North Dakota Century Code section 28–32–14. Such a rehearing shall be a formal hearing on the claim."

(N.D.1978), that the need for a hearing must be judged on its merits in each case, I thought it meant that the Bureau would do that judging and we would only get involved when someone sought an extraordinary remedy.

The denial of the claim should be affirmed.