Herbert O. JENSEN, Petitioner and Appellant,

v.

Tom POWERS, Warden, Respondent and Appellee.

Civ. No. 910079.

Supreme Court of North Dakota.

June 25, 1991.

Herbert O. Jensen, pro se.

Edwin F. Zuern (argued), Asst. Atty. Gen., Bismarck, for respondent and appellee.

MESCHKE, Justice.

Herbert O. Jensen appeals from an order denying his petition for a writ of certiorari. The district court ruled that the warden had not exceeded his jurisdiction in implementing a "unit management" plan that regulates conduct of prisoners at the penitentiary. We affirm.

With the approval of the director of the division of adult services, the warden of the North Dakota penitentiary implemented a "unit management" plan for housing units in the penitentiary. Each prisoner is asked to sign an "Individual Performance Plan" (I.P.P.) "to establish a performance plan for that individual inmate." The purposes of the I.P.P. include "to improve inmate accountability, responsibility, and control by holding inmates accountable for their own actions, behavior, and consequences," and "to develop a basic understanding of eligibility criteria necessary for movement to Preferred Housing Units."

By signing an I.P.P. form, an inmate agrees to keep himself and his cell clean, to behave in an adult manner, to attend school if needed, and to "comply with the treatment staff's recommendations and ... complete any and all treatment recommended or terminate all chances of placement in Preferred Housing," as well as to carry out specific "personal goals" set by the unit management team.

Jensen, serving long-term sentences for murder, was one of several prisoners who refused to sign an I.P.P. Jensen also filed grievance complaints, objecting to the I.P.P., but his grievances were rejected by the warden. Then, a designated team of staff members met with Jensen to discuss the plan, but he continued to refuse to sign. As a result of his refusal, the team recommended that Jensen be deprived of the privileges of a television and computer. The warden approved of the deprivation. Jensen's television and all components of a personal computer were removed from his cell.

Jensen continued to refuse and to complain, filing more written grievances that objected to the I.P.P. and to deprivation of his privileges. When these grievances were rejected too, Jensen petitioned the district court for a writ of certiorari. Jensen claimed that "the warden exceeded his jurisdiction when he promulgated [the] policy to punish inmates for refusing to sign [a] behavior modification plan known as the Inmate Performance Plan." Jensen argued that the deprivation of privileges "trigger[s] mini[m]um due process," that the I.P.P. "contracts are invalid when signed under duress," that the I.P.P. is unconstitutionally vague, and that he has a

"constitutional right to refuse behavior modification programs and not be punished."

The district court ruled:

Clearly this falls within the protection of Section 12–47–12 of the NDCC, and is within the jurisdiction of the Warden. Accordingly, the writ is denied.

Jensen appealed.

On appeal, Jensen argues at length that the district court abused its discretion in denying certiorari because "the warden had [no] jurisdiction to force inmates in maximum security to sign behavior modification individual performance plan contracts," and because the "sanctions" imposed on him for refusing to sign the I.P.P. violated his substantive due process rights.

Judicial review on a writ of certiorari "cannot be extended further than to determine whether the ... officer has pursued regularly the authority of such ... officer." NDCC 32–33–09. *See Manikowske v. North Dakota Workmen's Compensation Bureau*, 373 N.W.2d 884 (N.D.1985). We conclude that the warden is regularly pursuing the power of his office in implementing this plan to regulate the conduct of prisoners.

The warden is authorized to regulate the conduct of prisoners. NDCC 12–47–12 (part) says:

*Warden to make rules and regulations.* The warden, subject to the approval of the director of the division of adult services, shall make rules and regulations not in conflict with the laws of this state and shall prescribe penalties for the violation thereof:

\*     \*     \*     \*     \*     \*

3. For the conduct of prisoners committed to the state penitentiary.

A printed copy of the rules and regulations must be furnished to each person committed to the penitentiary at the time of admission and to each official or employee thereof at the time of hire. Two copies of such rules must be furnished to the state law library for the use of the state officials and the public. Such rules must be explained to each prisoner in the prisoner's native language if the prisoner cannot read English.

The published policy describing the I.P.P. plan warns that, if "the individual simply refuses to sign the performance plan," suspension of privileges will result. Privileges subject to suspension include "[l]oss of property items such as television, stereo, computer, street clothing, etc." [1]

Jensen's objections are overblown. Control of privileges for lack of cooperation by an inmate is well within the warden's statutory authority to regulate the conduct of prisoners. *See Jackson v. McLemore*, 523 F.2d 838 (8th Cir.1975) (Punitive segregation, for a prisoner's refusal to participate in compulsory education in aid of rehabilitation, does not raise a substantial federal constitutional question); J. Gobert and N. Cohen, *Rights of Prisoners*, § 11.11, "The Right to Rehabilitation/The Right to Refuse Rehabilitation," pp. 345–46 (1981) ("Courts have upheld the imposition of disciplinary sanctions on prisoners who fail to participate in institutionally required rehabilitation, at least where the programs were perceived as beneficial and not infringing on other recognized inmate rights"). Deprivation of a prisoner's privileges does not infringe on any recognized right of a prison inmate.

Dispossession of privileged items of property, like a television and a computer, does not violate any constitutional right of a prisoner. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3206, 82 L.Ed.2d 393 (1984) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects ... and therefore all searches and seizures of the contents of an

---

1. The list of other privileges subject to suspension for refusal to sign an I.P.P. includes:
   1. Reduction of recreation hours.
   \*     \*     \*     \*     \*     \*
   3. Suspension of coed activities.
   4. Reduction of telephone privileges.
   5. Change of job assignment.
   6. Change of living area or housing unit.
   7. Suspension of Preferred Housing Units and preferred job eligibility.
   8. Other privileges determined by the multidisciplinary team.

inmate's cell are reasonable." (Citations omitted) (O'Connor, Justice, concurring)). Jensen is in prison, not at summer camp. His loss of use of the television and computer is within the power of the warden.

We affirm denial of Jensen's petition for a writ of certiorari.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.