Application of **OTTER TAIL POWER COM-PANY** for a Certificate of Public Convenience and Necessity to Provide Electric Service to F. J. Froeschle at Section 2, Township 134, Range 56, Ransom County, North Dakota.

**CASS COUNTY ELECTRIC COOPERATIVE, INC., Complainant and Respondent,**

v.

**OTTER TAIL POWER COMPANY, Applicant and Appellant.**

Civ. No. 8541.

Supreme Court of North Dakota.

July 2, 1969.

Wattam, Vogel, Vogel & Peterson, Fargo, for Cass County Elec. Co-op., Inc.

Lewis & Bullis, Wahpeton, and Field, Arvesen, Donoho & Lundeen, Fergus Falls, Minn., for Otter Tail Power Co.

John C. Stewart, Bismarck, for Public Service Commission of North Dakota.

STRUTZ, Judge (On reassignment).

This is an appeal from a judgment of the district court of Ransom County, which judgment affirmed an order of the Public Service Commission denying the application of Otter Tail Power Company for an order granting Otter Tail a certificate of public convenience and necessity to provide electric service to the residence of one F. J. Froeschle at a rural site outside the city limits of Lisbon, North Dakota.

The record discloses that Froeschle, a long-time customer of Otter Tail at his

residence in Lisbon, built a new home in Island Park Township, a rural area just north of the limits of the city. He requested electric service for this new home from Otter Tail, which furnishes such service to persons living within the city limits of Lisbon. In order to reach the new Froeschle residence, it was necessary for Otter Tail to construct approximately 1,300 feet of line, approximately one-half of which was outside the city limits. The entire extension cost Otter Tail about $1,000, and the cost of that portion of the extension which was outside the city limits was approximately $450.

Cass County Electric Cooperative, Inc., protested the extension of Otter Tail lines to the Froeschle residence in the rural area. Cass County Electric serves approximately twenty-five rural users located within one mile of the corporate limits of Lisbon. The record discloses that Cass County Electric serves all rural users of electricity in the Lisbon area except five or six who are located south of the city. In order to serve Froeschle at his new residence, it will be necessary for Cass County Electric to install between 1,529 and 1,565 feet of new line at an estimated cost of $500 to $700.

The record further discloses that Froeschle has expressed a preference for service from Otter Tail.

Under these circumstances, Otter Tail Power Company constructed its line to the Froeschle residence and began serving the customer without first making application for a certificate of public convenience and necessity. Otter Tail strenuously asserts that this court has held that where an area is served by two suppliers of electricity, the customer has the right to choose from which of these suppliers he desires to take his electricity, citing Cass County Electric Coop. v. Otter Tail Power Co., 93 N.W.2d 47 (N.D.1958). It is true that, at the time of the above decision, public utilities could extend their lines within the territory which they were serving and into territory contiguous to that being served by them which was not then being served by another supplier, without permission so to do. At the time of the *Cass County Electric* decision, the only control which the Public Service Commission had over any such extensions of the system of a public utility was in the cases where another supplier complained and was able to prove that such extensions unreasonably interfered with its service or with its system. Thus such extensions could be made by a public utility at that time without proving: (1) public convenience and necessity; (2) that such extensions would not be a duplication of service; and (3) that the extensions would not interfere with the development of electric service in the area.

Subsequent to the decision in Cass County Electric Coop. v. Otter Tail Power Co., *supra*, in 1958, however, the Legislature enacted a new law on the subject, Chapter 319 of the Session Laws of 1965, which amended portions of Chapter 49–03, North Dakota Century Code. The 1965 amendment was commonly referred to as the "Territorial Integrity Law." Under the provisions of this amendment, no public utility could extend its service lines outside the limits of a municipality which it was serving without a determination by the Public Service Commission that public convenience and necessity required such extension. The 1965 law, as enacted, provided that such certificate of public convenience and necessity could not be issued unless the electric cooperative with lines or facilities nearest the place where service is required shall consent in writing to such extension by the public utility or unless, upon a hearing before the Public Service Commission, it shall be shown that the service required cannot be provided by an electric cooperative. This court, in Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D.1967), held that this provision, which authorized the electric cooperative nearest the rural area proposed to be served by a public utility to determine whether the public utility or the cooperative should serve the area, was an un-

lawful delegation of legislative authority to the electric cooperative and that Section 3 of the 1965 law therefore was unconstitutional.

The balance of the Territorial Integrity Law of 1965, however, was held to be valid. The provisions of the remaining sections of the law required that any extension into rural areas by a public utility could be made only upon a showing before the Public Service Commission that public convenience and necessity required such extension.

■ It was asserted by the respondent, Cass County Electric, and stated by the trial court in its memorandum opinion that cooperatives now are the preferred suppliers of electrical energy in all rural areas of the State, and that a public utility may not enter a rural area unless it is physically and economically impracticable for a cooperative to furnish electric service in such area. We do not believe that a fair reading of the law would justify this conclusion. The law, as amended, merely provides that before a public utility shall be permitted to extend its lines into certain areas, it must show that public convenience and necessity reasonably requires such extension.

■ Otter Tail further asserts that, inasmuch as both Otter Tail and Cass County Electric now are serving rural areas outside of Lisbon, and inasmuch as the record shows that the lines of Otter Tail are somewhat nearer the site to be served than are the lines of Cass County Electric, and inasmuch as Otter Tail for many years has served in the area and that there is no showing on the part of Cass County Electric that the granting of the certificate of public convenience and necessity to Otter Tail in this case will result in wasteful duplication, and inasmuch as the record discloses that the customer to be served prefers to have service from Otter Tail, such customer preference should determine which of the suppliers in the area should be permitted to serve Froeschle. While

under circumstances as here presented customer preference should be considered, there are a number of other factors which also must be considered in determining whether the application of Otter Tail for a certificate of public convenience and necessity should be granted. These factors include: the location of the lines of the suppliers; the reliability of the service which will be rendered by them; which of the proposed suppliers will be able to serve the area more economically and still earn an adequate return on its investment; and which supplier is best qualified to furnish electric service to the site designated in the application and which also can best develop electric service in the area in which such site is located without wasteful duplication of investment or service.

Otter Tail, on appeal to this court, has demanded a trial de novo. A trial de novo, as provided for in Section 28–27–32, North Dakota Century Code, requires that questions of fact will be tried anew in the Supreme Court. In this case, there is very little dispute as to the facts. It is only the determination to be made from those facts which is in dispute. An appeal from the decision of an administrative agency, provided for in Chapter 28–32, North Dakota Century Code, provides for the scope of the appeal and the procedure to be followed in such appeals. Section 28–32–19 provides, in part, that the court shall—

"* * * affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules of procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact."

■ Upon appeal to the Supreme Court from the decision of an administrative agency, even where a demand is made for trial de novo, the scope of the appeal must be limited as above provided or we will have one rule governing review in the trial court and a totally different rule governing review in the Supreme Court. The Supreme Court, on such appeal, does not have jurisdiction to decide administrative questions which have been delegated by the Legislative Assembly to the agency for determination. City of Carrington v. Foster County, 166 N.W.2d 377 (N.D.1969).

■ The administrative power to determine public convenience and necessity in this case has been vested by law in the Public Service Commission. Where an administrative agency must determine what constitutes public convenience and necessity, a certain amount of judgment and discretion must be allowed the agency. In determining public convenience and necessity, its order may not be arbitrary, capricious, or unreasonable. When there is substantial evidence from which to draw reasonably the inference of the existence of the facts necessary to support the finding on the question of public convenience and necessity, its order will not be found to be arbitrary, capricious, or unreasonable. In re Hanson, 74 N.D. 224, 21 N.W.2d 341, 346 (1946).

■ Whether the public convenience and necessity in this case requires that the public utility be permitted to extend its lines into the rural area in question must be determined by the Public Service Commission, acting under the law. It comes to this court for review through the procedure prescribed by the Legislature, as outlined above. The procedure thus provided for review of the action taken by the Public Service Commission by the courts does not contemplate that we exercise legislative or administrative functions in our determination. The Constitution prohibits the Legislature from conferring upon this court such power. Sec. 96, N.D. Constitu-

tion. See also Great Northern Ry. Co. v. McDonnell, 77 N.D. 802, 45 N.W.2d 721, 726 (1950); City of Carrington v. Foster County, *supra*.

■ Thus this court, on an appeal with demand for trial de novo, does not have the power to determine administrative questions which are within the purview of the Public Service Commission. That agency alone has the authority to make this determination, and such determination will not be disturbed on appeal unless it can be shown that such decision or determination is not in accordance with the law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of the law have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact. Sec. 28–32–19, N.D.C.C.

■ When there is substantial evidence to support the decision of the agency, that decision must be affirmed. This merely reaffirms our holding in Williams Electric Cooperative v. Montana-Dakota Utilities Co., 79 N.W.2d 508 (N.D.1956), where we said:

"* * * the courts do not have the jurisdiction, primarily, to decide administrative questions assigned to the public utilities commission (PSC) for determination and where such commission in its proceedings furnishes due process of law and there is substantial evidence to support the findings of the commission, the courts have no authority to substitute their judgment for that of the commission."

The trial court reviewed the record made before the Public Service Commission and concluded that the findings, conclusions, and decision of the Commission

420

are supported by substantial evidence and that the conclusions and decision are in accordance with the law. It thereupon affirmed the decision of the Commission.

We have reviewed the record on this appeal and agree with the district court. The judgment appealed from therefore is affirmed.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.