347 N.W.2d 331 (1984)
In the Matter of Gailyn BOSCHEE and Northern Realty, Inc.
NORTH DAKOTA REAL ESTATE COMMISSION, Appellant,
v.
Gailyn BOSCHEE and Northern Realty, Inc., Appellees.
Civ. No. 10567.
Supreme Court of North Dakota.
March 29, 1984.
*332 Dean F. Bard, Sp. Asst. Atty. Gen., Bismarck, for appellant; argued by Dean F. Bard, Bismarck.
Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for appellees; argued by Patrick A. Conmy, Bismarck.
PEDERSON, Justice.
This case is before us for review pursuant to the Administrative Agencies Practice Act, Ch. 28-32, NDCC. The North Dakota Real Estate Commission (hereinafter Commission) suspended the real estate broker licenses of Gailyn Boschee and Northern Realty, Inc. on the grounds that they had made false promises and engaged in conduct constituting dishonesty or fraudulent conduct contrary to the provisions of §§ 43-23-11.1(1)(c) and 43-23-11.1(1)(v), NDCC.[1] The trial court, on its review of the Commission's decision, entered judgment vacating the suspension. We reverse for the reasons stated herein and remand for entry of judgment affirming the suspension.
We will summarize the background facts to provide a better understanding of our disposition of this appeal. Boschee is, and at all pertinent times was, individually licensed as a real estate broker. He also is, and was, sole owner of Northern Realty, Inc., the possessor of a corporate real estate broker's license, and the sole owner of B & L, Inc., a construction company engaged *333 in the development of real estate. Under the circumstances of this case, for reasons which will be explained more fully later in this opinion, we will attribute all conduct to Boschee without distinguishing whether any particular act or comment is that of B & L, Inc., Northern Realty, Inc., or Gailyn Boschee.
Boschee developed and constructed Westwood Village Condominiums in the 1100 block of Jefferson Avenue in Bismarck and sold unfinished units to the various complainants in the proceeding before the Commission, orally promising that the units would be completed. The major complaint concerned the parking lot and access to the garages, which Boschee had promised would be paved at the time the units were sold to the complainants and for as long as four years thereafter. Some of the promises, particularly those relating to the paving, were made as part of the sales pitch to buyers and some were made after the units were sold, when Boschee knew, or had reason to know, that his growing financial plight made it unlikely that he could fulfill those promises. He did not disclose his financial situation, which he attributed to the economy and to his divorce, until he was unable to complete even the minor $7,000 paving project. The complainants finally arranged to have the paving done and paid for it themselves.
At the hearing before the Commission, some of the complainants testified that they assumed they were dealing with Gailyn Boschee as an individual, not as an agent of Northern Realty or B & L, Inc. The only times Boschee specified which hat he was wearing was when he referred to liability for certain acts. At no point in his testimony did he claim that he had distinguished his various capacities when he dealt with the complainants. Any disclosure to that effect may have been irrelevant, in any event, because § 43-23-11.1(1)(v), NDCC concerns a licensed broker's conduct in a capacity "within or without the pursuit of his licensed privilege."
The Commission found that Boschee had made false promises to the complainants that he would install paving, and that the promises were made to induce the complainants to buy their units. (Finding of Fact IV[2]; Finding of Fact V[3]; Finding of Fact VI[4]; Finding of Fact VII[5].) In adopting *334 a code of ethics for realtors, the Commission has not defined "false" promises or "dishonesty or fraudulent conduct." See Chapter 70-02-03, N.D.Admin.Code. The Commission held, however, that the false promises resulted in injury to the complainants, a violation of § 43-23-11.1(1)(c), NDCC, and that Boschee had engaged in conduct which was dishonest or fraudulent, a violation of § 43-23-11.1(1)(v), NDCC. (Conclusion of Law II[6]; Conclusion of Law III[7].) Pursuant to its authority under § 43-23-11.1(1), the Commission suspended the licenses of Boschee and of Northern Realty for thirty days.
Boschee appealed the Commission's decision to the district court, specifying the following grounds as required by § 28-32-15, NDCC:[8]
"1. The decision is in violation of the constitutional rights of the appellants.
"2. The provisions of Chapter 28-32 have not been complied with.
"3. The conclusions and decisions of the agency are not supported by its findings of fact."
The district court determined that fraud or misrepresentation had to be shown by clear and convincing evidence, and that there was no evidence in the record to support the Commission's findings. Accordingly, it vacated the Commission's decision. The Commission then appealed the district court's decision to this court, claiming that the district court erred in its scope of review.
In North Dakota Real Estate Commission v. Allen, 271 N.W.2d 593, 594 (N.D.1978) this court concluded that:
"Because the North Dakota Real Estate Commission is an administrative agency, our review of its decision is controlled by Chapter 28-32, N.D.C.C., the Administrative Agencies Practice Act."
The Legislature, via § 28-32-21, NDCC,[9] has directed this court to make the same review as the district court is required to make under § 28-32-19, NDCC. Therefore, we do not, in the usual sense, review the district court's decision, but, rather, we review the agency's decision on the record developed in its proceedings and under the same standard of review used by the district court.
The first question we must address concerns scope of review. Does the district court (and, subsequently this court) review only the items specified by the appellant or may it review all the items enumerated in § 28-32-19? The Commission contends *335 that because Boschee's notice of appeal, filed pursuant to § 28-32-15, does not specify as error the question of whether or not the findings of fact are supported by a preponderance of the evidence, the district court erred by exceeding the scope of review demanded by Boschee.
To support its contention, the Commission cites Haugland v. North Dakota Employment Security Bur., 218 N.W.2d 181, 184 (N.D.1974) and Application of Otter Tail Power Company, 169 N.W.2d 415 (N.D.1969). Those cases do not settle the question of whether or not the scope of review in the district court and in the Supreme Court is limited to issues specified as grounds for appeal pursuant to § 28-32-15.
The Legislature has, since 1974, made significant changes in the provisions of § 28-32-19. These changes occurred after the adoption or amendment of § 28-32-15. The requirement in § 28-32-19 that.. the court shall affirm the decision of the agency unless it shall find any of the following ... [six items] present," does not conflict with the provisions in § 28-32-15. The Commission is correct in arguing that on appeals of administrative agency decisions, courts may consider only those grounds specified pursuant to § 28-32-15. The grounds specified must, however, come within the provisions of § 28-32-19:
"1. The decision or determination is not in accordance with the law.
"2. The decision is in violation of the constitutional rights of the appellant.
"3. Provisions of this chapter [28-32] have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
"6. The conclusions and decision of the agency are not supported by its findings of fact."
Boschee specified items (2), (3) and (6) as grounds for appeal.
We recently had occasion to summarize our previous holdings concerning the standard of review for appeals from decisions of administrative agencies. See Application of Nebraska Public Power Dist., 330 N.W.2d 143 (N.D.1983). We noted that in an appeal which has first been appealed to the district court and then to this court, we review the agency's decision and look to the record compiled before the agency itself. Application of Nebraska, 330 N.W.2d at 146. We further pointed out the following standards which apply equally to the district court's review and to this court's review: (1) we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence, Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 220 (N.D.1979); (2) we exercise restraint when we review administrative agency findings, Asbridge v. North Dakota State Highway Com'r, 291 N.W.2d 739, 744 (N.D.1980); (3) it is not the function of the judiciary to act as a super board when reviewing administrative agency determinations, Barnes County v. Garrison Diversion, Etc., 312 N.W.2d 20, 25 (N.D.1981); and (4) we will not substitute our judgment for that of qualified experts in the administrative agencies, Bank of Hamilton v. State Banking Bd., 236 N.W.2d 921, 925 (N.D.1976).
We have already stated that the Commission concluded that Boschee had made false promises "of a character such as to influence, persuade, or induce" some of the complainants, to their injury or damage, and that Boschee's conduct constituted "dishonesty or fraudulent conduct." Having determined the proper scope of review, we now must apply those standards to the dispositive questions:
(1) Does the decision of the Commission violate Boschee's constitutional rights? Section 28-32-19(2).
*336 (2) Have the provisions of Chapter 28-32 been complied with? Section 28-32-19(3).
(3) Are the conclusions and decision of the Commission supported by the findings? Section 28-32-19(6).
This court has held, in instances where Rule 52(a), NDRCivP applies, that it is not bound by labels of "finding of fact" and "conclusion of law" which may have been affixed below. See, e.g., Midland Diesel Service & Engine v. Sivertson, 307 N.W.2d 555, 557 (N.D.1981). Rule 52(a), of course, does not apply to this case, but there are many obvious similarities between that rule and the requirements of § 28-32-13, NDCC,[10] which do apply to this case, with regard to findings and conclusions. Much has been written about the adequacy of findings for purposes of review under Rule 52(a), NDRCivP, and much has been written about the dilemma of appellate courts trying to cope with less than desirable agency findings. The United States Supreme Court has referred to administrative agency findings as "leaving much to be desired," but has accepted them when they are not so vague and obscure as to make judicial review perfunctory. Colorado Interstate Gas Co. v. Federal P. Com., 324 U.S. 581, 595, 65 S.Ct. 829, 835, 89 L.Ed. 1206, 1219 (1945).
When are findings adequate? When they enable this court to understand the basis of the fact finder's decision. "Although the findings and conclusions are unartfully drawn, we are able to understand the factual basis upon which the trial court reached its conclusions." Voskuil v. Voskuil, 256 N.W.2d 526, 530 (N.D.1977). See also, Vetter v. Vetter, 267 N.W.2d 790 (N.D.1978); Matson v. Matson, 226 N.W.2d 659 (N.D.1975); and Ellendale Farmers Union Cooperative Ass'n v. Davis, 219 N.W.2d 829 (N.D.1974). Compare, however, Struchynski v. Decker, 194 N.W.2d 741 (N.D.1972) and Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).
Professor Davis in 2 Administrative Law Treatise § 16.06 (1958) describes the adequacy of administrative agency findings in relation to "... the need of the reviewing court for a clear view of the basis for the agency's action...." In§ 16.10 Davis charges that: "The law of findings is often used as a convenient tool which discerning judges delicately manipulate to provide such judicial control of administrative policies as they may deem to be in the public interest in particular circumstances." See generally, 3 Davis, Administrative Law Treatise §§ 14.21-14.24, 14.26-14.29 (2d ed. 1980).
The writers of Am.Jur.2d state that: "The courts cannot perform their function of review in the absence of adequate findings,...." 2 Am.Jur.2d Administrative Law § 458. Some courts have expressed the view that agency findings must be "more exacting" than those of a trial court, while others have said they "need not be as precise and detailed" as would be required of a judge who tries a civil action without a jury. 73A CJS Public Administrative Law and Procedure § 144.
Without setting out specific guidelines, this court has, on at least two occasions, commented on the adequacy of findings by administrative agencies under § 28-32-13, in one case remanding for proper findings and, in the other case, finding no benefit from a remand. Kuhn v. North Dakota Public Service Commission, 76 N.W.2d 171, 177 (N.D.1956); Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur., 171 N.W.2d 104, 108 (N.D.1969). We have often weighed the relative benefits of remanding for the preparation of more adequate findings in cases involving Rule 52(a), NDRCivP. As a general rule, this court has expressed a preference for reaching the merits of the controversy. See e.g., LeFevre Sales, Inc. v. Bill Rippler Const., 238 N.W.2d 673, 676 (N.D.1976).
*337 Although the Commission's findings and conclusions in this case are not artfully drawn, we are able to understand the basis of the agency's decision that Boschee's promises were false and his conduct was dishonest or fraudulent.[11] The Commission appropriately suspended the license of Northern Realty, Inc., as well as Boschee's individual license. As we held at syllabus 3 in Schriock v. Schriock, 128 N.W.2d 852, 853 (N.D.1964): "A court of equity will on a proper occasion disregard the legal fiction of separate corporate existence." See also Hilzendager v. Skwarok, 335 N.W.2d 768 (N.D.1983) and Kapp v. Naturelle, Inc., 611 F.2d 703 (8th Cir.1980). We are convinced that Boschee also understands that the disciplinary action is based upon his promises and conduct, not upon his financial circumstances.
We conclude that the Commission's findings adequately disclose the reasons for, and support the decision to take, disciplinary action against Boschee and Northern Realty in this case. We further conclude that the suspension order does not violate any of Boschee's constitutional rights, and that the proceedings have been in accordance with the Administrative Agencies Practice Act.
The administrative agency decision is affirmed, the judgment of the district court is reversed, and the case is remanded to the district court with directions to enter judgment affirming the Commission's decision. Because a public question is involved, each side will bear the costs they have incurred.
ERICKSTAD, C.J., GIERKE and SAND, JJ., and MAURICE R. HUNKE, District Judge, concur.
VANDE WALLE, J., disqualified; MAURICE R. HUNKE, District Judge, sitting in his stead.
NOTES
[1] Section 43-23-11.1(1)(c and v) provide:

"1. The commission upon its own motion may, and upon the verified complaint in writing of any person shall, investigate the activities of any licensee or any person who shall assume to act in such capacity within the state, and shall have the power to suspend or revoke a license when the licensee, in performing or attempting to perform any of the acts included within the scope of this chapter, has performed one or more of the following:
* * * * * *
"c. Making any false promise of a character such as to influence, persuade, or induce a party to a real estate transaction to his injury or damage.
* * * * *
"v. Any other conduct, whether of the same or of a different character than specified in this subsection, which constitutes dishonesty or fraudulent conduct, whether arising within or without the pursuit of his licensed privilege."
[2] Finding of Fact IV states in part:

"That in each instance ... Boschee ... made certain promises and representations concerning the installation of bituminous paving which was supposed to be furnished as a part of the cost of each condominium unit.... Boschee ... promised him [Rokusek] that the paving would be installed during the summer of 1982.... Boschee ... made numerous promises to him [Gartner] that his paving would be installed during the year 1979.... Boschee ... promised her [Speaks] that her paving would be installed in the fall of 1982.... Boschee ... first promised that his [Cline's] paving would be installed in the spring of 1981. After that date, it was promised it would be installed during the summer of 1981. When this date went by, it was promised the paving would be installed in the fall of 1981.... Boschee ... promised that his [Jensen's] paving would be installed in the spring of 1981.... Boschee ... promised that the paving would be installed in June of 1980, thereafter during September or October of 1980, thereafter during the early spring of 1981, and thereafter during May or June, 1981. In each of the instances related above, the promises to install the paving were not kept, as no paving was ever installed in the fulfillment of the promises made...."
[3] Finding of Fact V states in part:

"That the promises made by Boschee ... were such that persuaded at least one of the parties, to-wit, Richard A. Gartner, to purchase his condominium unit, as he would not have purchased the unit had he known that the promise to install the paving would not be kept."
[4] Finding of Fact VI provides:

"That because the promises to install paving were not kept, the individuals named above, who had purchased condominium units, together with other condominium unit owners that were affected, arranged for the paving to be installed and paid for the installation of the paving themselves. The cost to complete the paving was in excess of $7,000, and this was prorated back among the various condominium unit owners, amounting to charges of $600-700 per owner. No part of the cost to install the paving has been paid over to the condominium owners by B & L or the respondent Boschee, even though he acknowledges his legal responsibility for the payment."
[5] Finding of Fact VII provides in part: "That during the period of time that the various promises to install the paving were made, Boschee ... suffered severe financial reverses... The Commission ... finds that his financial situation did not relieve the respondent, Boschee, from his promised obligation to install the paving referred to, and in any event, promises were made by Boschee ... after the time that Boschee knew of his ... financial difficulties, and that it was questionable when the promises could be fulfilled, therefore the promise was false...."
[6] Conclusion of Law II provides in part:

"That the promises to install the paving made by Boschee ... were false and fraudulent and caused certain of the purchasers ... to enter into the purchase of their respective condominium units, for if they had known that said paving would not be installed as promised, they would not have entered into the transaction. That these purchasers were damaged as a result of the false promises and fraudulent conduct."
[7] Conclusion of Law III provides in part:

"That said false promises and fraudulent conduct is a violation of that standard of ethical conduct established for licensees of the commission under 43-23-11.1(1)(c) and 43-23-11.1(1)(v). Under the latter section, respondent Boschee is held to the same standard of conduct as the respondent Northern, regardless of whether he was acting on behalf of B & L in the sale of the condominium units or whether he was acting in his own behalf as the owner thereof...."
[8] Section 28-32-15 provides in part:

"... Such appeal shall be taken by serving a notice of appeal and specifications of error specifying the grounds on which the appeal is taken...."
[9] Section 28-32-21 provides in part:

"The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28-32-19...."
[10] Section 28-32-13 provides in part:

"... the agency shall make and state concisely and explicitly its findings of fact and its separate conclusions of law...."
[11] It is not necessary that witnesses characterize Boschee's promises as being "false" or that his conduct be "dishonest" or "fraudulent." These are conclusions to be reached by the Commission which has the authority and expertise to evaluate promises and conduct of realtors.